UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURG, PA., | ) ) ) | |
| Plaintiff and Counter Defendant, | ) ) ) ) | |
| v. | ) ) | 3:11-cv-15-RLY-WGH |
| MEAD JOHNSON & COMPANY and MEAD JOHNSON NUTRITION COMPANY, | ) ) ) ) | |
| Defendants and Counter Claimants, | ) ) ) ) | |
| v. | ) ) | |
| LEXINGTON INSURANCE COMPANY, | ) ) | |
| Additional Counter Defendant. | ) ) | |

**ORDER ON DEFENDANTS/COUNTER CLAIMANTS'
MOTION TO COMPEL PRODUCTION AND NATIONAL UNION
AND LEXINGTON'S MOTION FOR PROTECTIVE ORDER**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, on a Motion to Compel Production filed by Defendants/Counter Claimants Mead Johnson & Company, LLC, and Mead Johnson Nutrition Company filed August 19, 2011. (Docket Nos. 103-105). Plaintiff/Counter Defendant National Union Fire Insurance Company of Pittsburgh, Pa., and Additional Counter Defendant Lexington Insurance Company filed a Motion for Protective Order on September 8, 2011. (Docket No.

112). National Union and Lexington's Amended Combined Memorandum in Opposition to Mead Johnson's Motion to Compel and in Support of Motion for Protective Order was filed on September 12, 2011. (Docket No. 115). Defendants/Counter Claimants filed a Reply Brief on September 28, 2011. (Docket No. 120).[1] An amended Affidavit of Tara L. Lucas was filed October 5, 2011. (Docket No. 121, Exhibit A).

The Magistrate Judge, being duly advised, now **GRANTS, in part,** and **DENIES, in part,** both the Defendants/Counter Claimants' Motion to Compel Production and the National Union and Lexington's Motion for Protective Order.

## Discussion

Plaintiff/Counter Defendant, National Union Fire Insurance Company of Pittsburgh, Pa., and Counter Defendant, Lexington Insurance Company, (collectively hereafter "National") sold to Defendants/Counter Claimants Mead Johnson & Company and Mead Johnson Nutrition Company (collectively hereafter "Mead") insurance policies providing, among other things, coverage for advertising related injury. The competing claims at issue in this case relate to whether, under the policies, Mead is entitled to receive reimbursement for defense and indemnity costs incurred with respect to litigation brought against Mead for its allegedly disparaging advertisements by (i) a competitor of Mead named PBM Products, LLC (hereafter "PBM"), and (ii) consumers of Mead

---

[1] The parties have tendered "Letters" to the court at Docket Nos. 122, 126, and 130. However, none of these letters were considered by the Magistrate Judge in this decision.

products (hereafter "Consumer").[2]  The parties, in their briefs, have not addressed particular interrogatories or requests for production of documents on an item-by-item basis, but have agreed that there are certain categories of information which the court must address to resolve the dispute between the parties.  The Magistrate Judge, being duly advised, now issues the following rulings:

**(a)    The Underwriting Files For Policies At Issue**

National argues that absent a finding of ambiguity in the material language of the policies, information sought in underwriting files is not relevant.  However, given that Federal Rule of Civil Procedure 26 allows discovery to be commenced prior to the time that a court ultimately determines whether language is ambiguous, an order preventing all discovery prior to formal legal briefing on the ambiguity issue would unduly delay resolution of this case.  As the Magistrate Judge understands the parties' positions, if construction of the policies at issue must be undertaken by the court, there are two primary terms or phrases which must be addressed.  First, the court must determine whether the claims brought against Mead meet the definition of "personal and advertising

---

[2]Mead, in its Counterclaim, has attempted to raise issues concerning coverage for the Consumer claims. (See Docket No. 50, Counterclaim ¶ 15).  Similar if not identical claims are pending in a lawsuit filed by National in the United States District Court for the District of Massachusetts, captioned *National Union Fire Insurance Company of Pittsburgh, Pa. v. Mead Johnson & Company*, Cause No. 1:11-cv-10042.  Pending in the District of Massachusetts is a motion to transfer that case to this court.

injury" found within the policies.  (*See* Document Request 10).  The second term at issue in this case will be whether Mead provided notice to the insurers "as soon as practicable," as that language is provided in the policies.  (*See* Document Request 11).  The court notes that it can find no specific definition of "as soon as practicable" in the policies themselves.

With these two issues predominating, the Magistrate Judge concludes that there is the potential for the court to determine that the definition of "personal and advertising injury" and perhaps the meaning of "as soon as practicable" is ambiguous.  Information found in underwriting analysis analyzing the potential for claims of a particular nature could lead to the discovery of relevant evidence establishing National's intended scope of coverage within that definition of advertising injury.

However, given that a major component of this case involves whether Mead appropriately notified National in a timely fashion of these particular suits, the Magistrate Judge concludes that *extensive* broad-ranging discovery of all National underwriting policies and guidelines is not warranted.

The Magistrate Judge overrules the relevancy objection to the provision of underwriting materials, but concludes that only policy-specific materials concerning the placement, underwriting, issuance, scope, and application of the particular policies at issue and the identity of the persons involved in the decision to underwrite the specific policies at issue in this case must be disclosed.  Mead's request for "all manuals, guidelines or procedures for

underwriting" is overly broad.  Production of any such additional materials will be limited to any manuals or guidelines that were specifically in place and used by the company during the time period that the policies at issue were subject to underwriting, review, and approval immediately prior to their issuance, or, if reissued, the most recent reissuance prior to the claims brought under the PBM and Consumer claims.

**(b)     Insurers' Communications With Reinsurers**

Reinsurance is a form of insurance obtained by insurance companies to help spread the burden of indemnification.  *Foremost Life Ins. Co. v. Department of Ins.*, 409 N.E.2d 1092, 1097-99 (Ind. 1980).  Indiana courts have concluded that a direct insured "has no interest in the reinsurance contract and the reinsurer is not bound by the provisions of the original insurance policies issued by the company being reinsured."  *State of Fla. ex rel. O'Malley v. Department of Ins.*, 291 N.E.2d 907, 913 (Ind.Ct.App. 1973).  However, in this District, Magistrate Judge Lynch, in a well-reasoned decision, held in *Cummins, Inc. v. Ace American Ins. Co.*, 2011 WL 130158 at *11 (S.D. Ind. 2011), that although a reinsurance agreement itself is not likely admissible, communications found within reinsurance files can lead to the discovery of admissible evidence about the insurer's own definition of claims which could fall under its insurance agreements.  The Magistrate Judge, therefore, overrules the relevancy objection to communications found in the "reinsurance" files.  The Magistrate Judge does

conclude that certain confidential business information regarding the pricing of that insurance should be protected. Therefore, National may redact from any reinsurance communications the pricing involved in the purchase of that reinsurance. As previously determined, the reinsurance materials will be limited to those materials which specifically pertain to the policies at issue before the court at this time. No other reinsurance information need be disclosed.

**(c)   The Insurers' Manuals or Marketing Materials Applicable to the Types of Coverage and Claims at Issue**

National has not at this time conceded that the claims in the PBM and Consumer claims are claims that would have been paid but for improper or untimely notice. Therefore, their manuals or guidelines for handling, reviewing, evaluating, denying, or paying claims are relevant for purposes of discovery, if such exist. The Affidavit of Tara L. Lucas submitted in opposition to this claim indicates that the unit responsible for handling Mead's claims at issue "does not possess, maintain or rely upon such documentation." While the Magistrate Judge accepts Ms. Lucas's representation under oath at face value, it seems unlikely that insurers would have no "manuals, guidelines, or procedures for handling, reviewing, evaluating, denying, or paying claims." It seems unlikely that National would comport with a business model under which they simply hire good people and tell them to do the right thing. Therefore, National shall make available for examination a person from the unit responsible for handling Mead's claim to testify as to what guidelines or procedures for denying or paying

claims was in effect for the period of time from January 1, 2008, through December 31, 2010.

Mead also seeks materials regarding the insurers' marketing of the policies. The Magistrate Judge overrules the relevancy objection with respect to the insurers' marketing of the policies and directs that National provide the materials used to market the types of policies at issue in this case.

**(d)   Information Sufficient to Reflect Relevant Reserves**

It is the Magistrate Judge's understanding that loss reserves by an insurance company are largely based on regulatory criteria and do not represent the company's own evaluation of liability. That is to say, an insurer who has the potential to pay a liability may be required to reserve a substantial amount for that liability, even though the company concludes that there is a significant chance that the liability will not be incurred. The Magistrate Judge concludes that reserve information is not relevant to this claim and sustains the objection to information concerning reserves.

**(e)   Information Concerning the Hiring of the Paul Hastings Law Firm**

The requests which seek information about prior selection or approval of the Hastings Law Firm are overbroad and of marginal relevancy. However, National shall identify the number of times that law firm was retained to defend claims brought pursuant to policies for "personal and advertising injury" for the period of time commencing April 27, 2008 (one year before the filing of the PBM

Verified Complaint against Mead) and April 27, 2010 (one year after the filing of that Complaint). In all other respects, the Motion to Compel Production is denied.

**(f)  Information to Reflect Payment of Advertising Coverage For Claims Brought By an Insured's Consumer**

In this case, the Affidavit of Tara L. Lucas establishes that there is undue burden in responding to the requests as they are currently presented, and the Motion to Compel Production should be denied. However, in light of Mead's Counterclaim in this case and a still undetermined resolution of the case pending in Massachusetts, the Magistrate Judge concludes that the relevancy objection with respect to Consumer claims should be overruled. National shall provide a knowledgeable insurance representative capable of addressing at a deposition under Federal Rule of Civil Procedure 30(b)(6) whether National provided defenses for or paid indemnity for advertising claims brought by the consumers of products during the time period from one year before the filing of the earliest of the "consumer complaints against Mead," until one year after the latest filed complaint against Mead.

## Conclusion

Therefore, Mead's Motion to Compel Production is **GRANTED, in part,** and **DENIED, in part.** National is reminded of its obligation to provide a privilege log for any documents which are withheld from production under the terms of this Order, if other claims of privilege are to be determined by the court. Items to be

produced under this Order shall be produced within thirty (30) days of the date of this Order.

    **SO ORDERED.**

**Dated:** October 21, 2011

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Electronic copies to:**

Matthew B. Barr
BARNES & THORNBURG LLP
mbarr@btlaw.com

Charles P. Edwards
BARNES & THORNBURG LLP
charles.edwards@btlaw.com

James E. Gentry Jr.
BOWERS HARRISON LLP
jeg@bowersharrison.com

Mark D. Gerth
KIGHTLINGER & GRAY
mgerth@k-glaw.com

Daniel I. Graham Jr.
BATES CAREY NICOLAIDES, LLP
dgraham@bcnlaw.com

Mary F. Licari
BATES CAREY NICOLAIDES, LLP
191 North Wacker - Suite 2400
Chicago, IL 60606

Laura A. McArdle
BATES CAREY NICOLAIDES LLP
lmcardle@bcnlaw.com

Mark E. Miller
Bowers Harrison, LLP
mem@bowersharrison.com

Richard H. Nicolaides Jr.
BATES CAREY NICOLAIDES LLP
rnicolaides@bcnlaw.com

Brendan D. O'Toole
WILLIAMS MULLEN
botoole@williamsmullen.com

Robert F. Redmond Jr.
WILLIAMS MULLEN
rredmond@williamsmullen.com

John E. Rodewald
BATES CAREY NICOLAIDES, LLP
jrodewald@bcnlaw.com

Bertrand C. Sellier
VANDENBERG & FELIU LLP
bsellier@vanfeliu.com

Hal S. Shaftel
CADWALADER WICKERSHAM & TAFT LLP
hal.shaftel@cwt.com

Louis M. Solomon
CADWALADER, WICKERSHAM & TAFT LLP
louis.solomon@cwt.com

Kase L. Stiefvater
KIGHTLINGER & GRAY
kstiefvater@k-glaw.com

Brent R. Weil
KIGHTLINGER & GRAY
bweil@k-glaw.com