UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE ) <br> COMPANY OF PITTSBURG, PA., ) <br> ) <br>    Plaintiff/Counterclaim-Defendant, ) <br> ) <br>               v. ) <br> ) <br> MEAD JOHNSON & COMPANY and ) <br> MEAD JOHNSON NUTRITION ) <br> COMPANY, ) <br> ) <br>    Defendants/Counterclaim-Plaintiffs, ) <br> ) <br> LEXINGTON INSURANCE COMPANY, ) <br> ) <br>    Additional Counterclaim-Defendant. ) | 3:11-cv-15-RLY-WGH |

**MAGISTRATE JUDGE'S ORDER ON
MOTION TO COMPEL THE PRODUCTION OF
UNDERLYING ATTORNEY-CLIENT DOCUMENTS**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, on National Union Fire Insurance Company of Pittsburgh, PA.'s Motion to Compel the Production of Underlying Attorney-Client Documents filed November 23, 2011.  (Docket Nos. 148-150, 152).  The Mead Johnson Defendants filed their Memorandum of Law in Opposition on December 12, 2011.  (Docket No. 165).  National Union's Reply Brief was filed on December 22, 2011.  (Docket No. 176).

The Magistrate Judge, being duly advised, now **DENIES, with one exception,** the Motion to Compel the Production of Underlying Attorney-Client Documents.

This case is brought by National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") seeking a declaratory judgment with respect to its duties under particular insurance policies issued to Mead Johnson & Company, LLC, and Mead Johnson Nutrition Company (collectively "Mead"). Mead was sued by a plaintiff known as PBM Products, LLC, in the Eastern District of Virginia in 2009. Mead defended that lawsuit, which resulted in a jury verdict adverse to Mead. This suit involves the issue of whether Mead must be indemnified under certain policies of insurance for the verdict rendered in the underlying PBM lawsuit.

National Union has filed two sets of Requests for Production of Documents. Request No. 22 of the first set and Request Nos. 1, 2, and 3 of the second set specifically seek *communications between Mead and its counsel* in the PBM lawsuit. Mead has objected to the production of those documents because they are documents which specifically implicate the attorney work product doctrine and attorney-client privilege prepared during the underlying PBM litigation.

National Union and Lexington Insurance Company ("Lexington") do not dispute the fact that most of the documents they seek fall within the protections

of the attorney work product doctrine and the attorney-client privilege as they relate to the underlying PBM lawsuit. However, National Union believes that these materials must be produced in this case because the "common interest doctrine" applies. Alternatively, National Union argues that Mead has a contractual duty to cooperate under the National Union Policy which requires the production of the communications between Mead and its defense counsel in the PBM lawsuit.

**The Common Interest Doctrine:**

The Magistrate Judge agrees with Mead's recitation of the law with respect to the common interest doctrine. This doctrine is an exception to the general rule regarding waiver of privileged communications vis-á-vis third parties:

> [T]he common interest doctrine is really an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third party. In effect, the common interest doctrine extends the attorney-client privilege to otherwise non-confidential communications in limited circumstances. For that reason, the common interest doctrine *only will apply where the parties undertake a joint effort with respect to a common legal interest, and the doctrine is limited strictly to those communications made to further an ongoing enterprise.*

*U.S. v. BDO Seidman*, LLP, 492 F.3d 806, 815-16 (7th Cir. 2007)(emphasis added)(*citing, inter alia, U.S. v. Evans*, 113 F.3d 1457, 1467 (7th Cir. 1997)). The elements then which must be present for the doctrine to apply include: (1) the parties must be aligned with regard to a common legal interest against a third party; (2) the parties must have agreed to share the privileged information; and

(3) the information must remain confidential; i.e., there must be no waiver of the privilege with respect to third parties.

In this case, the parties are not *currently* aligned with respect to a common legal interest against a third party. The PBM litigation is no longer in existence, and there is no evidence establishing that the common legal interest currently exists because of an appeal of that PBM litigation. Even if it could be said that both National Union and Mead *previously* had a common legal interest in reducing the amount of any judgment which might be obtained by PBM, there is no evidence before the court that National Union and Mead have agreed to share the privileged information.[1] The Magistrate Judge believes that the common interest doctrine would allow Mead or National Union to protect privileged information from discovery by PBM against an argument by PBM that waiver of the attorney-client privilege had occurred by disclosures between Mead and its insurers. The Magistrate Judge believes that under the circumstances in this case – where National Union and Mead are the only parties to this current litigation, are adversarial, and have not agreed to share these materials – the common interest doctrine does not apply.

---

[1] As discussed below, the "Cooperation Clause" in the policy requires Mead to provide information to its insurer, but that clause does not explicitly provide that Mead must waive the confidentiality of all its communications with counsel.

**The Cooperation Clause in the National Union Policy:**

National Union also argues that it is entitled to Mead's privileged documents under the Cooperation Clause of the National Union Policy. That policy provides that Mead shall "[c]ooperate with [National Union] in the investigation or settlement of the claim or defense against the 'suit'" and "[a]ssist [National Union], upon [National Union's request], in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply." (Brief in Support of Motion to Dismiss, Section IV(2)(c)(3 & 4), p. NU0018, at Docket No. 84, Ex. 15).

As the briefs establish, the law is unsettled on the issue of whether the existence of a cooperation clause requires the disclosure of otherwise privileged communications between an insured and an insurer. The Magistrate Judge concludes that the better practice under the precise facts of this case is to conclude that the clause does not operate as a wholesale waiver of the attorney-client privilege. There is no evidence currently before the Magistrate Judge that the parties to the insurance contract expressly intended such a result in the event of subsequent litigation between them. The insurance contracts at issue here were drafted between two large and sophisticated legal entities. While ultimately National Union may prevail in this lawsuit because the court determines that Mead failed to comply with the Cooperation Clause, the Magistrate Judge does not believe that the clause itself should be read as

implicating the wholesale waiver of the attorney-client privilege in the context of a declaratory judgment action between the two contracting parties.

## Conclusion

An important distinction must be recognized in order for this ruling to make sense. It is clear that Mead must produce to National Union/Lexington all of the factual materials that it possesses which relate to the claims raised in the PBM suit. Those materials, which were in its possession at the time the PBM suit was filed and any which were used at the trial of that case, must be produced so that National Union/Lexington can assess for themselves whether they would have provided a defense under their policies if notice had been given to them prior to the jury verdict. Likewise, Mead is required to produce all non-privileged materials which relate to Mead's decision about when to notify the insurer of the PBM suit. However, what is being asked for in this motion to compel goes beyond the factual materials and asks for the communications between Mead and its counsel – clearly attorney-client privileged items or attorney work product.

The Magistrate Judge believes that in this case a determination of whether National Union must indemnify Mead for the jury verdicts at issue will be determined primarily upon the: (1) explicit language of the policies; (2) the publicly pled cause of action; and (3) the publicly available jury instructions and jury verdict rendered in the underlying PBM litigation. The issue of whether

Mead properly cooperated with its insurer will be principally based upon whether Mead did or did not notify National Union of the claim at a commercially reasonable time prior to the jury verdict being rendered. The communications between Mead and its defense counsel in the underlying litigation undoubtedly have some relevance to these inquiries. However, factual evidence with respect to Mead's decision as to when to notify National Union can be obtained by other means than requiring the wholesale production of the attorney-client privileged communications or attorney work product listed in Request No. 22 (of the first set) and Request Nos. 1 and 3 (of the second set) of National Union's Requests for Production of Documents.

The Magistrate Judge would note that with respect to Request No. 2 (of the second set), National Union's request to produce "[a]ll bills, invoices, statements and time records of the attorneys that represented Mead Johnson in PBM Lawsuit III" cannot generally be considered attorney-client privileged communications nor attorney work product. *Pandick, Inc. v. Rooney*, 1988 WL 61180, at *2 (N.D.Ill. 1988). Those "bills, invoices, statements and time records" are relevant to explore the appropriateness of the fees charged (an element of Mead's claimed damages); therefore, those items found in Request No. 2 (of the second set) must be produced and should be produced in a form that minimally redacts them to prohibit the disclosure of what is otherwise attorney-client privileged communications and/or the portions of bills, invoices,

statements, and time records that unduly disclose the opinions and thought processes of defense counsel as they may appear from the billing process.

Therefore, the Motion to Compel the Production of Underlying Attorney-Client Documents is **DENIED, with the exception of Request No. 2.** Those items must be produced, subject to redaction as described above, by January 30, 2012.

**SO ORDERED.**

**Dated:** January 5, 2012

_____
William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Electronic copies to:**

James E. Gentry Jr.
BOWERS HARRISON LLP
jeg@bowersharrison.com

Mark D. Gerth
KIGHTLINGER & GRAY
mgerth@k-glaw.com

Daniel I. Graham Jr.
BATES CAREY NICOLAIDES, LLP
dgraham@bcnlaw.com

Mary F. Licari
BATES CAREY NICOLAIDES, LLP
mlicari@bcnlaw.com

Laura A. McArdle
BATES CAREY NICOLAIDES LLP
lmcardle@bcnlaw.com

Mark E. Miller
Bowers Harrison, LLP
mem@bowersharrison.com

Richard H. Nicolaides Jr.
BATES CAREY NICOLAIDES LLP
rnicolaides@bcnlaw.com

Brendan D. O'Toole
WILLIAMS MULLEN
botoole@williamsmullen.com

Robert F. Redmond Jr.
WILLIAMS MULLEN
rredmond@williamsmullen.com

John E. Rodewald
BATES CAREY NICOLAIDES, LLP
jrodewald@bcnlaw.com

Bertrand C. Sellier
VANDENBERG & FELIU LLP
bsellier@vanfeliu.com

Hal S. Shaftel
CADWALADER WICKERSHAM & TAFT LLP
hal.shaftel@cwt.com

Louis M. Solomon
CADWALADER, WICKERSHAM & TAFT LLP
louis.solomon@cwt.com

Kase L. Stiefvater
KIGHTLINGER & GRAY
kstiefvater@k-glaw.com

Brent R. Weil
KIGHTLINGER & GRAY
bweil@k-glaw.com