UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., <br><br> Plaintiff, <br><br> vs. <br><br> MEAD JOHNSON & COMPANY, <br> MEAD JOHNSON NUTRITION COMPANY, <br><br> Defendants. <br> _____ <br><br> MEAD JOHNSON NUTRITION COMPANY, <br> MEAD JOHNSON & COMPANY, <br><br> Counter Claimants, <br><br> vs. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., <br> LEXINGTON INSURANCE COMPANY, <br><br> Counter Defendants. | 3:11-cv-00015-RLY-WGH |

**ENTRY ON NATIONAL UNION AND LEXINGTON'S RULE 72(a) OBJECTION TO MAGISTRATE JUDGE HUSSMANN'S OCTOBER 21, 2011 ORDER**

This case arises out of prior litigation between PBM Products, LLC ("PBM"), and Mead Johnson Nutrition Company and Mead Johnson & Company ("Mead Johnson"), competitors in the sale of infant formula (the "PBM Action"). The PBM Action involved claims that Mead Johnson engaged in a false advertising campaign against store brand

1

infant formulas manufactured by PBM Products LLC, Mead Johnson's business competitor, by claiming in a direct mailer to consumers that PBM's store brand infant formulas were nutritionally inferior to Mead Johnson's infant formula, Enfamil LIPIL®, in violation of the Lanham Act (15 U.S.C. § 1125(a)(1)).  On November 10, 2009, PBM prevailed at trial and obtained a $13.5 million judgment.  *See PBM Products, LLC v. Mead Johnson Nutrition Co., et al.*, 678 F.Supp.2d 390 (E.D. Va. 2009), *aff'd*, 639 F.3d 111 (4th Cir. 2011).

During this general time frame, Mead Johnson was insured by both National Union Fire Insurance Company under Commercial General Liability Policy No. 090-72-27, and by Lexington Insurance Company under Commercial Umbrella Liability Policy No. 065302639, both of which provided advertising liability coverage for the policy period February 10, 2009 to February 10, 2010.  Following the jury verdict, Mead Johnson sought insurance coverage from National Union and Lexington (collectively "Insurers") for the underlying PBM Claim.  This prompted National Union to file the present declaratory judgment action on January 6, 2011, in this court, seeking a declaration that it is not obligated to defend or indemnify Mead Johnson with respect to the underlying PBM Action because, *inter alia*, Mead Johnson failed to give timely notice of the claim, and the damages imposed by the jury in the underlying PBM Lawsuit are not covered under the Policy.  Mead Johnson counterclaimed against both Insurers for breach of contract and a declaration that it is entitled to coverage under the respective Policies.

Since the filing of this lawsuit, Insurers have filed a number of appeals of discovery orders issued by the Magistrate Judge pursuant to Rule 72(a) of the Federal Rules of Civil Procedure. Those appeals were denied as moot following the court's entry of summary judgment on the issue of late notice in favor of the Insurers. (Filing No. 267).

Mead Johnson appealed the court's entry to the Seventh Circuit Court of Appeals. In a published opinion, the Court held that Mead Johnson "failed inexcusably to comply with the notice provisions in its liability insurance policies," but reversed the entry of summary judgment because "there has been no factual development in the district court concerning the issue of harm." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Mead Johnson & Co., LLC*, 735 F.3d 539, 544-45 (7th Cir. 2013). The case was remanded to this court for further proceedings consistent with its opinion. *Id*. As a result of the Seventh Circuit's ruling, National Union's Rule 72(a) appeals are now ripe for ruling. This Entry addresses the Insurers' Objection to the Magistrate Judge's October 21, 2011 Order.

**I.      The Discovery Order**

On August 19, 2011, Mead Johnson filed a Motion to Compel the production of the following: (1) the underwriting files for the Policies at issue; (2) the insurers' communications with reinsurers concerning the policies and claims at issue; (3) the portions of the Insurers' manuals or marketing materials applicable to the types of coverage and claims at issue; (4) information sufficient to reflect any relevant reserves concerning the Policies; (5) information sufficient to reflect the Insurers' approval of the Paul Hastings Law Firm; and (6) information sufficient to reflect the Insurers' payment

of advertising coverage for claims brought by the Insured's consumers[1]. (Filing No. 103). On October 21, 2011, the Magistrate Judge granted in part, and denied in part, Mead Johnsons' Motion to Compel. Specifically, the Magistrate Judge granted Mead Johnson's request with respect to: (1) the underwriting files; (2) communications between the Insurers' reinsurers; (3) the number of times the Paul Hastings Law Firm was retained by the Insurers to defend claims brought pursuant to "personal and advertising injury" for the period April 27, 2008, through April 27, 2010; and (4) the Insurers' manuals or marketing materials. In addition, he ordered the Insurers to "make available for examination a person from the unit responsible for handling Mead [Johnson]'s claim to testify as to what guidelines or procedures for denying or paying claims was in effect for the period of time from January 1, 2008, through December 31, 2010." (Filing No. 131).

## II.   Standard of Review

The court's review of the Magistrate Judge's discovery-related decision is governed by Rule 72(a) of the Federal Rules of Civil Procedure. That rule provides that a district court may modify or set aside any part of a non-dispositive order referred to a magistrate judge that is clearly erroneous or contrary to law. FED. R. CIV. P. 72(a) ("The district judge in the case must consider timely objections and modify or set aside any part of [the magistrate judge's nondispositive] order that is clearly erroneous or contrary to law."). The clear error standard is highly differential, permitting reversal only when the

---

[1] The Seventh Circuit affirmed the court's grant of summary judgment in favor of the Insurers in the Consumer Class Action Lawsuit, 3:11-cv-161-RLY-WGH. This request is therefore moot. *Nat'l Union*, 735 F.3d at 549.

district court "is left with the definite and firm conviction that a mistake has been made."

*Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

**III.   Discussion**

The posture of this case has changed to a degree since the Magistrate Judge made his rulings.  The focus now is on whether the Insurers' were harmed (or prejudiced) by Mead Johnson's untimely notice of the PBM Action, whether there is "personal and advertising injury" coverage under the Policy, whether any exclusions apply (*i.e.*, whether the first "publication" was made during the policy period, etc.), and whether National Union's, as opposed to Mead Johnson's, copy of the Deductible Endorsement is operative and binding on the parties.  With this understanding in mind, the court now turns to the merits of the Insurers' objections.

**A.   Underwriting Files**

The Magistrate Judge found Mead Johnson's request for the entire underwriting file to be overly broad, and limited his ruling to:

> only policy-specific materials concerning the placement, underwriting, issuance, scope and application of the particular policies at issue and the identity of the persons involved in the decision to underwrite the specific policies at issue in this case . . . .

(Filing No. 131, at ECF p. 4).  With the addition of National Union's latest claims regarding the Deductible Endorsement (Counts IX and X), even the Insurers' agree their underwriting files for the Policies at issue may contain information reflective of the parties' intent regarding which copy of the Deductible Endorsement – Mead Johnson's or National Union's – is operative and binding.  (Filing No. 311, at ECF p. 2).  With respect

5

to the balance of their claims (Counts I-VIII), Insurers argue that because the policy terms at issue – "personal and advertising injury" and "as soon as practicable" – are clear and unambiguous, extrinsic evidence regarding the meaning of those terms would not lead to the discovery of admissible evidence.  At the outset, the court notes that, given the Seventh Circuit's recent ruling, the claim term "as soon as practicable" is no longer an issue in this case.

  The term "personal and advertising injury" is defined in the Policies as arising out of, *inter alia*, "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person or organization or disparages a person's or organization's goods, products or services." (Filing No. 247-1, at ECF p. 21 (National Union Policy); *see also* Filing No. 247-5, at ECF p. 4 (Lexington Policy)). This Policy language setting forth coverage for advertising injury is unambiguous. *Novell, Inc. v. Federal Ins. Co.*, 141 F.3d 983, 986 (10th Cir. 1998) (finding identical policy language unambiguous) (citing *Erie Ins. Group v. Sear Corp.*, 102 F.3d 889, 894 (7th Cir. 1996));  *see also United Nat'l Ins. Co. v. SST Fitness Corp.*, 182 F.3d 447, 450 (6th Cir. 1999) (same).  The court construes unambiguous policy language in accordance with its plain and ordinary meaning. *Liberty Mut. Ins. Co. v. Michigan Mut. Ins. Co.*, 891 N.E.2d 99, 101 (Ind. Ct. App. 2008).  The court therefore agrees with the Insurers that discovery of the underwriting files – except for that portion that relates to the Deductible Endorsement – is not relevant to the meaning of "personal and advertising injury," and would not lead to the discovery of admissible evidence.

The court further finds that the manner in which National Union analyzed, assessed, and underwrote the risk of a false advertising lawsuit is not probative of the issue of the Insurers' prejudice, if any, as a result of the late notice.  Prejudice in this instance is not dependent on an underwriter's view of the risk of a false advertising lawsuit, but rather on Mead Johnson's potential liability exposure if found liable at trial, and the verdict value and/or settlement value of the case.  Accordingly, the Insurers' Objection is **SUSTAINED in part** and **OVERRULED in part**.

### B.   Communications with Reinsurers

The Magistrate Judge ruled that communications found in the Insurers' reinsurance files "can lead to the discovery of admissible evidence about the Insurers' own definition of claims which could fall under its insurance agreements." (Filing No. 131, at ECF p. 5).  In so doing, the Magistrate Judge overruled the Insurers' relevancy objection.

The court agrees with the Insurers.  As noted above, the Policy term at issue ("personal and advertising injury") is not ambiguous.  Thus, communications within Insurers' reinsurance files regarding the meaning of claim terms is irrelevant to this coverage dispute.  The Insurers' Objection is **SUSTAINED**.

### C.   Insurers' Claims Manuals

By way of affidavit, the Insurers stated under oath that "the unit responsible for handling Mead Johnson's claims at issue does not possess, maintain, or rely upon" "claims manuals, including guidelines and procedures for handling, reviewing, evaluating, denying or paying claims." (Affidavit of Tara L. Lucas ¶ 14, Filing No. 111-

1, at ECF p. 4). The Magistrate Judge, finding this information to be relevant notwithstanding testimony that it did not exist, determined that a representative of the Insurers should "testify as to what guidelines or procedures for denying or paying claims [were] in effect for the period of time from January 1, 2008 through December 31, 2010." (Filing No. 131, at ECF pp. 6-7).

Insurers argue this information is irrelevant to the issues in this case. The court does not agree. This testimony could lead to the discovery of admissible evidence with regard to the Insurers' claims practices, the nature of the prejudice claimed by the Insurers resulting from Mead Johnson's late notice of the PBM Action, and the manner in which the Insurers would have conducted themselves differently, if at all, upon earlier notice. Accordingly, the court **OVERRULES** the Insurers' Objection.

### D. Insurers' Marketing Materials

The Magistrate Judge directed National Union to "provide the materials used to market the types of policies at issue in this case." (Filing No. 131, at ECF p. 7). The Insurers' object on two grounds. Mead Johnson argues these materials "are pertinent to, among other things, the parties' understandings and expectations about the scope and application of coverage, as well as the operation of the Policies' terms." (Filing No. 144, at ECF pp. 20-21). The court agrees with National Union, and finds that these materials are irrelevant to the issues in this case; the terms of the Policy control. Accordingly, the Insurers' Objection is **SUSTAINED**.

### E. Information Regarding the Insurers' Prior Engagements with the Paul Hastings Law Firm

The Magistrate Judge ordered National Union to "identify the number of times [the Paul Hastings Law Firm] was retained to defend claims brought [by insureds] pursuant to policies for 'personal and advertising injury' for the period of time commencing April 27, 2008 (one year before the filing of the Verified Complaint against Mead) and April 27, 2010 (one year after the filing of the Verified Complaint)." (Filing No. 131, at ECF p. 8). The Insurers argue that obtaining this information will be burdensome, given the "marginal relevancy" of the information.

The record reflects that Mead Johnson retained the Paul Hastings Law Firm in the PBM Action. Therefore, the number of times an insured has sought defense under a policy containing "personal and advertising injury" coverage and for which the Insurers retained the Paul Hastings Law Firm is highly relevant to whether the Insurers' were prejudiced as a result of Mead Johnson's late notice. See *Nat'l Union*, 735 F.3d at 544 (observing the fact that Mead Johnson used the same lawyer that National Union had used was relevant to the issue of prejudice). The court further finds that obtaining this information is not sufficiently burdensome to deny Mead Johnson's request. Insurers should be aware of the counsel they hire to defend their claims. The Insurers' Objection is therefore **OVERRULED**.

**IV.    Conclusion**

For the reasons set forth above, the court **SUSTAINS in part and OVERRULES in part**, National Union and Lexington's Rule 72(a) Objection to Magistrate Judge Hussmann's October 21, 2011 Order (Filing No. 136). The Objection is **SUSTAINED** as to: (1) Mead Johnson's request for communications found in the Insurers' reinsurance

9

files; (2) Mead Johnson's request for the Insurers' marketing materials; and (3) Mead Johnson's general request for the Insurers' underwriting files.  The Objection is **OVERRULED** as to: (1) Mead Johnson's request for the underwriting files as they pertain to National Union's claims arising from the Deductible Endorsement; (2) Mead Johnson's request for information regarding the Insurers' claims practices (in the form of testimony from a 30(b)(6) witness); and (3) Mead Johnsons' request for information regarding the Insurers' prior engagements with the Paul Hastings Law Firm.

**SO ORDERED** this 10th day of March 2014.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.